# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| MEMDATA, LLC, a Texas limited liability company,<br><br>  Plaintiff,<br><br>v.<br><br>INTERMOUNTAIN HEALTHCARE, INC., a Utah corporation; and IHC HEALTH SERVICES, INC., a Utah corporation,<br><br>  Defendants. | ORDER<br><br><br>Case No. 2:08-cv-190-TS-PMW<br><br><br><br>**District Judge Ted Stewart**<br><br>**Magistrate Judge Paul M. Warner** |

This case was referred to Magistrate Judge Paul M. Warner by District Judge Ted Stewart pursuant to 28 U.S.C. § 636(b)(1)(A).[1] Before the court is MEMdata, LLC's ("Plaintiff") motion (1) to compel discovery responses; (2) to change the confidentiality designation (made pursuant to the stipulated protective order in this case)[2] of certain documents produced by Intermountain Healthcare, Inc. and IHC Health Services, Inc. (collectively, "Defendants") from "Attorneys' Eyes Only" to "Confidential"; and (3) for sanctions under rule 37 of the Federal Rules of Civil

---

[1] See docket no. 15.

[2] See docket no. 16.

Procedure.[3]  Pursuant to civil rule 7-1(f) of the Rules of Practice for the United States District Court for the District of Utah, the court has concluded that oral argument is not necessary and will determine the motion on the basis of the written memoranda.  *See* DUCivR 7-1(f).

## MOTION TO COMPEL DISCOVERY RESPONSES

In its motion to compel, Plaintiff requests that the court order Defendants to produce two categories of documents:  (1) documents requested by Plaintiff's requests for production nos. 1 and 3, which are purchase orders and other associated documents related to Defendants' capital equipment purchases for Intermountain Medical Center (collectively, the "Purchase Order Documents"); and (2) documents requested by Plaintiff's requests for production nos. 4 and 5, which are any agreements or contracts Defendants entered into with any capital equipment vendor from January 1, 2004 to the present (or any contracts or agreements in existence during that same time period, even if entered into prior to January 1, 2004) (collectively, the "Supply Contract Documents").  The court will address each category in turn.

### 1. Purchase Order Documents

Plaintiff argues that Defendants have refused to produce the Purchase Order Documents. In their response to Plaintiff's motion, Defendants assert that on October 2, 2008, they communicated to Plaintiff that they were in the process of compiling the Purchase Order Documents in electronic format for production and that said documents would be produced as soon as possible.  Plaintiff's motion was filed on October 7, 2008.  Defendants eventually

---

[3] *See* docket no. 20.

produced the Purchase Order Documents on October 16, 2008, a point that Plaintiff appears to concede in its reply memorandum. While Plaintiff still takes issue with the confidentiality designation Defendants have placed on the Purchase Order Documents (an argument that will be addressed later in this order), it appears that the relevant documents have indeed been produced. Because the portion of Plaintiff's motion to compel seeking production of the Purchase Order Documents has been satisfied, that portion of its motion is **DENIED**.

### 2. Supply Contract Documents

With respect to the Supply Contract Documents, Defendants assert that those documents, which are contracts between Defendants and third-party suppliers not associated with this case, contain rather strict confidentiality provisions that preclude Defendants from producing them unless ordered to do so by a court. Defendants also assert that they have sent a letter to each of the suppliers notifying them that, in the absence of an objection from a supplier with respect to a particular contract, Defendants intend to produce those contracts to Plaintiff with a confidentiality designation of "Attorneys' Eyes Only." Defendants represent that if they receive any such objections from a supplier, they will inform Plaintiff promptly so that it may seek a court order compelling production.

Plaintiff responds by asserting that Defendants' course of action is not satisfactory. Plaintiff asserts that it is not optimistic that supplier permission will be forthcoming, especially given the time that has elapsed since the date of its requests for production.

In the court's view, Defendants' course of action with respect to the Supply Contract Documents is entirely reasonable. It appears that Defendants could have simply refused to

produce the documents by asserting that they were legally prohibited from doing so by the confidentiality provisions contained in the contracts. Instead, they have chosen to take a reasonable and cooperative approach by contacting their suppliers and being agreeable to producing the documents. While Plaintiff takes issue with Defendants' stated intention to attach an "Attorneys' Eyes Only" confidentiality designation to those documents (again, an argument that will be addressed later in this order), it seems advantageous for Plaintiff to receive the documents in some form, rather than not receiving them at all.

Finally, while the court understands Plaintiff's concern about the time that has passed since he requested the Supply Contract Documents, the current fact discovery deadline of May 19, 2009, is approximately six months away.[4] Given the amount of time left for discovery, the court has determined that it is reasonable to allow Defendants to attempt to secure consent from their suppliers to produce the documents. If those attempts prove futile as the discovery deadline approaches, or if certain suppliers refuse to consent to production of Supply Contract Documents, Plaintiff is free to renew its motion to compel with respect to those documents.

For these reasons, the portion of Plaintiff's motion to compel seeking production of the Supply Contract Documents is **DENIED**.

## MOTION TO CHANGE CONFIDENTIALITY DESIGNATION

In this portion of its motion, Plaintiff argues that Defendants have abused the stipulated protective order in this case by placing an "Attorneys' Eyes Only" designation on any produced

---

[4] *See* docket no. 19 at 5.

documents that contain pricing information for purchased equipment. Plaintiff argues that such documents should instead have a "Confidential" designation under the stipulated protective order, which would allow Plaintiff's representatives to view the documents.

In support of its request for a change in the confidentiality designation for documents containing Defendants' pricing information, Plaintiff advances several arguments. First, Plaintiff asserts that it has no intention of using any pricing information outside of this case. More specifically, Plaintiff asserts that it has no use for Defendants' pricing information because "Defendants cannot point to one instance in which the pricing for equipment Defendants obtained on [their] own was more favorable than pricing obtained by Plaintiff[]."[5] Second, Plaintiff argues that Defendants' pricing information cannot be as confidential as they allege because they regularly share that information with a third-party price review service. Finally, in response to Defendants' suggestion that Plaintiff retain an expert to review Defendants pricing information, Plaintiff contends that it "has neither intention nor any need at this time of retaining any outside experts"[6] because Plaintiff's own representatives have the expertise needed to perform that review.

In response, Defendants initially and correctly note that the language of the stipulated protective order is standard and well recognized. Defendants also argue that disclosure of their confidential pricing information to Plaintiff would cause them irreparable harm. Defendants

---

[5] Docket no. 21 at 7.

[6] *Id*. at 8.

assert that they are able to obtain favorable pricing from suppliers because they have agreements with those suppliers to keep pricing information confidential.  Defendants maintain that if Plaintiff is able to discover that information, it will compromise Defendants' ability to negotiate favorable pricing with their vendors; disadvantage Defendants' vendors relative to their competitors when negotiating with potential clients; and allow Plaintiff, which is in the business of providing medical facilities with capital equipment purchasing services and price benchmarking, to access Defendants' confidential pricing information, to which Plaintiff would not otherwise have access, for use in its business.

In response to Plaintiff's first specific argument, Defendants assert that their major concern is not Plaintiff's disclosure of the pricing information outside of this case.  Instead, Defendants are concerned about Plaintiff's mere knowledge of their confidential pricing information.  Defendants contend that while Plaintiff may believe that it has an unfailing ability to obtain better pricing than Defendants on any particular piece of equipment (a belief that Defendants doubt to be true), that does not render Defendants' pricing information any less valuable or less deserving of protection.  Defendants maintain that the parties' relative ability to obtain "better" pricing is irrelevant to the issue of whether Defendants should be forced to disclose their confidential pricing information to Plaintiff.  As stated earlier, Defendants claim that it is the disclosure of their confidential pricing information to Plaintiff that would cause irreparable harm to Defendants and their suppliers and provide Plaintiff with Defendants' confidential pricing information for use in its business.

As to Plaintiff's second specific argument, Defendants argue that their decision to share their pricing information with a third-party price review service is governed by strict confidentiality provisions in their contract with that third party.  Therefore, Defendants argue, their relationship with that third party has no bearing on whether Defendants should be required to share their confidential pricing information with Plaintiff in discovery in this lawsuit.

Responding to Plaintiff's final specific argument, Defendants assert that Plaintiff has failed to identify why an expert is actually necessary in this case.  Even putting that aside, Defendants argue that if Plaintiff is required to hire an expert, that does not constitute an undue burden, nor is it an uncommon situation in cases involving protective orders and confidential information and documents.

The court agrees with Defendants' arguments and has determined that Plaintiff's contentions are without merit, for the following reasons.  First, the court has no reason to doubt Defendants' assertion that disclosure of their confidential pricing information to Plaintiff would cause irreparable harm to Defendants and their suppliers and provide Plaintiff with Defendants' confidential pricing information, to which Plaintiff would not otherwise have access, for use in its business.  Although Plaintiff is correct that the parties are not direct competitors in their primary businesses, they are competitors in the arena of capital equipment pricing because each party has a vested interest in obtaining the lowest possible prices for capital equipment.

Second, the court agrees with Defendants assertion that Plaintiff's argument about the parties' relative ability to obtain "better" pricing misses the mark.  That argument is not relevant to the issue of whether Defendants should be forced to disclose their confidential pricing

information to Plaintiff.  In the court's view, Plaintiff's asserted ability to obtain "better" prices than Defendants does not diminish the value of Defendants' confidential pricing information, nor does it render Defendants' confidential pricing information any less deserving of protection.

Third, the court is not persuaded by Plaintiff's assertion that it "has neither intention nor any need at this time of retaining any outside experts."[7]  While that may indeed be true, Plaintiff's need to hire an expert because he is "unable to make heads or tails"[8] of Defendants' confidential pricing information does not create prejudice or an undue burden.  In the court's experience, the need to hire experts can be a standard cost of litigation, particularly in cases involving confidential pricing information.

Finally, the court finds it notable that both parties, through able and competent counsel, negotiated the protective order in this case at arm's length and eventually stipulated to its terms. The fact that Plaintiff's counsel now believes he may have "entered into the stipulated protective order too hastily while in the spirit of cooperation"[9] does not mean that its terms are somehow unenforceable or that he is able to dictate Defendants' confidentiality designations.  As an aside, the court recognizes Plaintiff's counsel's belief that he may have entered into the stipulated protective order too hastily, but the court specifically finds that undue haste does not necessarily

---

[7] *Id*.

[8] Docket no. 20, Exhibit B.

[9] *Id*.

spring from being in the spirit of cooperation.  Indeed, the court appreciates and encourages such cooperation.  Plaintiff's argument on this point fails to persuade the court as well.

Based on the foregoing, Plaintiff's motion to change the confidentiality designation of certain documents produced by Defendants is **DENIED**.

## **REQUEST FOR SANCTIONS**

The court has denied all of the relief requested in Plaintiff's motion.  Consequently, Plaintiff's request for sanctions is likewise **DENIED**.

**IT IS SO ORDERED**.

DATED this 5th day of December, 2008.

BY THE COURT:

_____
PAUL M. WARNER
United States Magistrate Judge