IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| MEMDATA, LLC, a Texas limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>INTERMOUNTAIN HEALTHCARE, INC., a Utah corporation, and IHC HEALTH SERVICES, INC., a Utah corporation,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, MOTION FOR NEW TRIAL<br><br><br><br>Case No. 2:08-CV-190 TS |

The Court has before it Defendants Intermountain Healthcare, Inc. and IHC Health Services, Inc.'s (collectively, "Intermountain") Renewed Motion for Judgment as a Matter of Law or, in the alternative, Motion for New Trial. Having reviewed the parties' respective arguments, the Court issues the following Order.

1

## I. LEGAL STANDARD

In considering a renewed motion for judgment as a matter of law under Fed.R.Civ.P. 50(b), the court makes "all reasonable inferences in favor of the non-moving party. 'Judgment as a matter of law is appropriate only if the evidence points but one way and is susceptible to no reasonable inferences which may support the nonmoving party's position.'"[1]

Under a motion for new trial pursuant to Fed.R.Civ.P. 59, the jury verdict must stand unless the Court finds it is "clearly, decidedly, or overwhelmingly against the weight of the evidence."[2]

## II. DISCUSSION

Intermountain argues that it is entitled to judgment as a matter of law or, in the alternative, a new trial on the issues of (1) contractual liability, (2) damages, and (3) Plaintiff MEMdata, LLC's ("MEMdata") failure to mitigate its damages. The Court will address each of these contentions in turn

A.   CONTRACTUAL LIABILITY

   *1.   Breach of Contract*

Intermountain argues that the evidence proved overwhelmingly that Intermountain had the right under the Performer Agreement to select which of its capital equipment projects to sent to MEMdata for review. Central to the parties dispute is paragraph 4 of the Performer

---

[1]*Escue v. Northern OK College*, 450 F.3d 1146, 1156 (10th Cir. 2006) (quoting *Loughridge v. Chiles Power Supply Co.*, 431 F.3d 1268, 1280 (10th Cir. 2005)).

[2]*Black v. Hieb's Enters.*, 805 F.2d 360, 363 (10th Cir. 1986).

Agreement, which states: "Client shall submit all of its most responsive proposals/bids/quotes (which Client's internal procedures define as 'capital equipment') for MEMdata review and allow five (5) business days for MEMdata to complete its analysis."[3] The Court ruled prior to trial that this provision was facially ambiguous and that the duty of defining the phrase should be submitted to the jury—as required by Utah law.[4]

In defining a facially ambiguous phrase, a jury is to look to relevant extrinsic evidence, including "facts known to the parties at the time they entered the contract."[5] Intermountain argues that the extrinsic evidence presented at trial undisputedly demonstrated that Intermountain could select the capital purchase projects it desired to send to MEMdata. Intermountain argues that the evidence and testimony at trial undisputedly demonstrated that MEMdata repeatedly represented to Intermountain in writing, in person, and in phone calls that Intermountain was under no obligation to submit all of its capital purchase projects to MEMdata. Intermountain further points to the testimony of Intermountain's Chief Financial Officer who recalled an agent of MEMdata telling him that Intermountain could "submit whatever [they] wanted."[6] This testimony was also consistent with Intermountain's Wolfgang Pelsechka and Phil Anderson, who also testified that MEMdata agents informed them that there was no volume commitment associated with the Performer Agreement.

---

[3]Trial Ex. 5.

[4]Docket No. 100, at 9.

[5]*Nielsen v. Gold's Gym*, 78 P.3d 600, 601 (Utah 2003) (quotation marks and citation omitted).

[6]Docket No. 188, at 3.

In opposition, MEMdata notes that the jury's charge in interpreting the contract was not as limited as suggested by Intermountain, but rather was to "determine the parties' intentions in light of the reasonable expectations of the parties, looking to the agreement as a whole and to the circumstances, nature, and purpose of the contract" and that it could "consider the parties' actions and performance as evidence of the parties' true intentions."[7] MEMdata argues that the language of the contract and evidence presented at trial obligated Intermountain to send all of its bids on capital equipment purchases to MEMdata. First, MEMdata notes, as it did repeatedly at trial, that the provision itself states that "Client *shall* submit *all* . . . ." MEMdata argues that this clear language alone supports the jury's verdict. Second, MEMdata points to the testimony of Mr. Yancy who testified as to his understanding of the contract. Third, MEMdata points to portions of Mr. Poleshka's testimony and related inner-Intermountain email communications that suggest Intermountain understood it had a commitment under the Performer Agreement to submit all of its capital equipment purchases to MEMdata.

The Court finds that in light of the testimony and evidence identified by MEMdata, the jury had ample evidence to support its verdict in favor of MEMdata. This conclusion is not changed by Intermountain's assertion that the contract was so ambiguous as to be unenforceable. "[A]lthough an agreement is uncertain or incomplete in some respects, its specific enforcement may nevertheless be decreed where the uncertainty relates to matters which the law

---

[7]Docket No. 167, Instruction No. 27.

makes certain or complete by presumption, rule or custom and usage."[8] The evidence presented at trial was sufficient to support the jury's finding that the Performer Agreement required Intermountain to send all of its capital equipment purchases to MEMdata. Therefore, the Court will deny Intermountain's request for judgment as a matter of law and request for a new trial on MEMdata's breach of contract claim.

    2.    *Breach of the Covenant of Good Faith and Fair Dealing*

Intermountain next argues that it is entitled to judgment as a matter of law or, in the alternative, a new trial on MEMdata's claim for breach of the covenant of good faith and fair dealing. Intermountain argues that MEMdata's claims under this covenant fall outside of the terms of the contract and therefore rely on "separate promises," which Intermountain argues is an inappropriate basis for recovery under the implied covenant under Utah law.[9] Intermountain's characterization of MEMdata's claim, however, is inconsistent with MEMdata's position at trial. MEMdata argued at trial that Intermountain engaged in conduct that destroyed or injured MEMdata's right to receive the fruits of the contract. To this end, MEMdata presented the testimony of Mr. Yancy, who testified that Intermountain limited MEMdata in its ability to perform under the contract by limiting the vendors from which MEMdata could solicit bids. Mr. Tribe, Intermountain's witness, also gave testimony which verified Mr. Yancy's claim that Intermountain limited the vendors MEMdata could contact. Additionally, MEMdata presented evidence to support its position that Intermountain used MEMdata's work product to solicit

---

[8] *Reed v. Alvey*, 610 P.2d 1374, 1378 (Utah 1980).

[9] *See* Docket No. 188, at 6 (citing cases).

lower estimates directly from its vendors, which injured MEMdata's ability to receive the fruits of the contract. This evidence is sufficient to support the jury's finding of a breach of the covenant of good faith and fair dealing. Therefore, the Court will deny Intermountain's request for judgment as a matter of law and request for a new trial on MEMdata's breach of the implied covenant claim.

B.   DAMAGES

Intermountain argues that MEMdata failed to prove its damages. First, Intermountain argues that MEMdata failed to prove that Intermountain's actions caused MEMdata damage. Intermountain details several alleged shortcomings in MEMdata's expert's analysis which it argues render this opinion on causation meaningless and speculative. After reviewing the evidence, the Court finds that even in light of these perceived shortcomings, the jury had sufficient evidence to support its damages award in favor of MEMdata. These alleged shortcomings were brought out during cross examination and appropriately submitted to, and presumably rejected by, the jury during their deliberations. These alleged shortcomings do not so outweigh the contrary evidence as to show that MEMdata, as a matter of law, was not entitled to damages.

Second, Intermountain argues that MEMdata's damage expert should have been excluded from trial. The Court has already previously considered and rejected these arguments,[10] and finds no reason to depart from its prior rulings.

---

[10] Docket Nos. 101 & 156.

The Court therefore finds that Intermountain is not entitled to judgment as a matter of law or a new trial on the issue of damages.

C.     MITIGATION OF DAMAGES

Intermountain lastly argues that the evidence presented at trial left no doubt that MEMdata failed to mitigate its damages. Mitigation of damages is an affirmative defense which requires the defendant to prove by a preponderance of the evidence that plaintiff had an opportunity to minimize or avoid the damages caused by defendant's conduct, and that the opportunity carried no "undue risk, burden or humiliation" to plaintiff.[11] Intermountain argues that MEMdata could have cancelled the Performer Agreement and avoided all loss. Evidence was presented at trial, however, that MEMdata and Intermountain continued to work together under the Performer Agreement in hopes of making the relationship work. There was sufficient evidence at trial to rebut Intermountain's claim that MEMdata sat idly by and allowed damages to accrue, but instead was actively working with Intermountain to utilize MEMdata's services under the Performer Agreement. The Court therefore will deny the motion on this ground.

### III. CONCLUSION

It is therefore

ORDERED that Intermountain's Renewed Motion for Judgment as a Matter of Law or, in the alternative, Motion for New Trial (Docket No. 187) is DENIED.

DATED   March 14, 2011.

---

[11] Docket No. 167, Instruction No. 38.

BY THE COURT:

_____
TED STEWART
United States District Judge